**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELEOBARDO LOPEZ, | ) Case No. CV 11-2152-JVS (JPR) |
| Petitioner, | ) |
| vs. | ) REPORT AND RECOMMENDATION OF U.S. |
| W.J. SULLIVAN,[1] Warden, | ) MAGISTRATE JUDGE |
| Respondent. | ) |

This Report and Recommendation is submitted to the Honorable James V. Selna, U.S. District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the U.S. District Court for the Central District of California.

**PROCEEDINGS**

On March 14, 2011, Petitioner filed a Petition for Writ of

---

[1]     Respondent informs the Court that Petitioner was transferred from his prison facility after filing the Petition. (Answer at 1.)  The prisoner locator function on the California Department of Corrections and Rehabilitation website indicates that Petitioner currently is housed at the California State Prison in Lancaster, under the supervision of Warden W.J. Sullivan.  Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Sullivan as Respondent for L.S. McEwen.  The clerk shall modify the docket to reflect the substitution.

Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254.[2]  On October 14, 2011, after five extensions of time, Respondent filed an Answer with an attached Memorandum of Points and Authorities.  On February 13 and 17, 2012, after three extensions of time, Petitioner filed two substantially similar traverses.  For the reasons discussed below, the Court recommends that the Petition be denied and this action be dismissed with prejudice.

**BACKGROUND**

On October 25, 2006, a jury convicted Petitioner of two counts of kidnapping to commit robbery, in violation of California Penal Code section 209(b)(1); 17 counts of false imprisonment, in violation of section 236; and 14 counts of second-degree robbery, in violation of section 211.[3]  (Lodgment 1, 2 Clerk's Tr. at 205-37.)  The trial court partially granted Petitioner's motion for a new trial, dismissing one of the two kidnapping-for-robbery convictions.  (Lodgment 2, 2 Rep.'s Tr. at 532-35.)  The court sentenced Petitioner to life in prison with the possibility of parole plus 90 years.  (Lodgment 1, 2 Clerk's Tr. at 302.)

Petitioner appealed, raising a single sufficiency-of-the-

---

[2]  Petitioner had filed a federal habeas petition in this Court on December 15, 2010.  On December 27, 2010, the Court dismissed the petition without prejudice for his failure to exhaust state remedies.

[3]  At the close of evidence, the trial court granted Petitioner's motion for judgment of acquittal on three robbery counts based on insufficiency of the evidence.  (Lodgment 2, 2 Rep.'s Tr. at 326-34.)

evidence claim challenging the asportation element of his kidnapping-for-robbery conviction; he does not raise that claim in the present proceeding. (Lodgment 3.) On August 27, 2008, the California Court of Appeal affirmed. (Lodgment 6.) Petitioner filed a Petition for Review in the California Supreme Court, which summarily denied it on December 12, 2008. (Lodgments 7, 8.)

Petitioner filed in all levels of the state court a habeas petition raising an ineffective-assistance-of-counsel claim, with subclaims corresponding to the grounds in the Petition. (Lodgments 9, 11, 13.) On March 19, 2010, the state superior court denied the petition because the claims could have been raised on direct appeal; the court of appeal summarily denied the petition on May 13, 2010; and on February 2, 2011, the state supreme court denied it "on the merits." (Lodgments 10, 12, 14.)

**PETITIONER'S CLAIMS**[4]

Petitioner's counsel were constitutionally ineffective for

---

[4] Petitioner argued throughout the state habeas proceedings only that his counsel was ineffective in various ways. (See Lodgments 9 at i-ii, 11 at i-ii, 13 at i-ii.) The Court therefore construes the Petition as raising similar ineffective-assistance-of-counsel claims, even though the "Questions Presented" seem to indicate that Petitioner wishes to raise the underlying issues as independent grounds for relief. (See Pet. at 12-14.) Any such claims, however, would be unexhausted, and the Court cannot consider a Petition containing unexhausted claims. See Rose v. Lundy, 455 U.S. 509, 518-19, 102 S. Ct. 1198, 1203-04, 71 L. Ed. 2d 379 (1982) (holding that federal court will not entertain habeas petition unless petitioner has exhausted available state remedies on every ground). In any event, as explained below, defense counsel was not constitutionally ineffective for failing to raise those claims because all of them lacked merit. Thus, the Court would have rejected them even if they had been properly before this Court.

the following reasons:

(A) Trial counsel failed to challenge the sufficiency of the evidence regarding his robbery convictions because under California law, the warehouse workers whom he allegedly robbed did not constructively possess the baby formula and therefore could not have been robbed of it. (Pet. at 12-14, 19-24, 27-28.)[5]

(B) Trial counsel failed to seek dismissal of the kidnapping-for-robbery counts by "bring[ing] to the court's attention" that it had previously acquitted his codefendant of those charges in a bench trial. (Id. at 12-14, 29-30.)

(C) Trial counsel failed to object to the prosecutor's misconduct in charging Petitioner and his codefendant with different counts in their separate prosecutions. (Id. at 12-14, 31-32.)

(D) Trial counsel failed to present any defense witnesses and conceded in closing argument that Petitioner was guilty of robbery and false imprisonment, challenging only the kidnapping-for-robbery charges. (Id. at 14, 25-28.)

(E) The cumulative prejudice from the above instances of ineffective assistance of trial counsel deprived Petitioner of a fair trial. (Id. at 33.)

(F) Appellate counsel was ineffective for failing

---

[5] The Petition contains an unnumbered attachment. For convenience and clarity, the Court uses the pagination furnished by the official CM-ECF electronic filing system.

1  to raise all of the claims above on direct appeal.

2  (Id. at 34.)

3  **SUMMARY OF THE EVIDENCE**

4  Because Petitioner, through his ineffective-assistance-of-

5  counsel claim, indirectly challenges the sufficiency of the

6  evidence supporting his robbery convictions, the Court has

7  independently reviewed the state court record. See Jones v.

8  Wood, 114 F.3d 1002, 1008 (9th Cir. 1997). Based on this review,

9  the Court adopts the following factual summary from the

10 California Court of Appeal opinion as a fair and accurate summary

11 of the evidence in this case.[6]

12     El Tapatio Foods Warehouse distributes food to

13     grocery stores. At 6:00 a.m. on May 24, 2002, three

14     armed men entered the warehouse: [Petitioner], Alfredo

15     Rivera and a third man. [Petitioner] and Rivera walked

16     into the manager's office and told him the warehouse was

17     being robbed. The men instructed eight people (employees

18     and independent truck drivers) to walk into the manager's

19     office. The eight individuals and the warehouse manager,

20     Willie Velasco, were then ordered into a small, eight

21     foot square bathroom. The armed men took the victims'

22     cell phones to prevent them from calling for help.

23         [Petitioner] instructed Rivera to stand guard

24

---

25     [6]    The factual summary set forth in a state appellate court
26 opinion is entitled to a presumption of correctness pursuant to 28
   U.S.C. § 2254(e)(1). See Vasquez v. Kirkland, 572 F.3d 1029, 1031
27 n.1 (9th Cir. 2009). Nonetheless, in an abundance of caution, the
   Court has independently reviewed the record to ensure the summary's
28 factual accuracy.

5

outside the bathroom door to make sure no one tried to escape or call the police. Velasco knew there was a hidden alarm in the bathroom, but he decided not to push it because he did not want to reveal its location to others, in case it was an inside job. Eight more people arrived, and [Petitioner] and the third accomplice forced them at gunpoint into the bathroom. There were now 17 victims in the bathroom, which had no windows and only a small vent.

One of the gunmen called two forklift operators, Jose Olmedo and Jose Castro, out of the bathroom and walked them approximately 50 feet at gunpoint to the loading dock where the forklifts were parked. Olmedo was directed to drive 40 feet to where the baby formula was stacked on pallets. [Petitioner] ordered each man to transport three pallets of baby formula to the staging area. On two separate occasions, [Petitioner] pointed his handgun at Olmedo and Castro and threatened to shoot them if they did not comply with his orders.

.   .   .   .

Olmedo and Castro were then ordered back into the bathroom. The gunmen demanded the victims' photo identification, saying if they called the police, the gunmen would track them down and kill them and their families. One of the gunmen drove a forklift to the bathroom door to barricade it. [Petitioner] and his accomplices drove away at 7:04 a.m. with $82,034.40 worth of stolen baby formula.

6

In the bathroom, Velasco pushed the silent alarm and the sheriff responded. In the meantime, the employees were able to break down the bathroom door and push the forklift away from the opening. The robbery had lasted one hour. All of [Petitioner]'s actions had been recorded by hidden surveillance cameras. [Petitioner] and Alfredo Rivera were apprehended one month later.

(Lodgment 6 at 2-3 (footnotes omitted).)

### STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Under AEDPA, the "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings of Supreme Court cases "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000).

Although a particular state court decision may be both

7

"contrary to" and "an unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings. Id. at 391, 413. A state court decision is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002). A state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Id.

State court decisions that are not "contrary to" Supreme Court law may be set aside on federal habeas review only "if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law, or based on 'an unreasonable determination of the facts.'" Id. at 11 (emphasis in original). A state court decision that correctly identified the governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular case. Williams, 529 U.S. at 406-08. To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable." Id. at 409-10. In other words, habeas relief is warranted only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786-87, 178 L. Ed. 2d 624 (2011).

Here, Petitioner raised his claims in habeas petitions to all levels of the state court, which denied them. (Lodgments 9, 10, 11, 12, 13, 14.) The state supreme court expressly stated that Petitioner's habeas petition was denied "on the merits." (Lodgment 14.) Because there was no reasoned state court decision at any level, the Court conducts an independent review of the record to determine whether the state supreme court, in denying Petitioner's claims, was objectively unreasonable in applying controlling federal law. See <u>Haney v. Adams</u>, 641 F.3d 1168, 1171 (9th Cir.) (holding that independent review "is not <u>de novo</u> review of the constitutional issue, but only a means to determine whether the state court decision is objectively unreasonable"), <u>cert. denied</u>, 132 S. Ct. 551 (2011); <u>see also</u> <u>Richter</u>, 131 S. Ct. at 784, 786 (holding that "petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief," and reviewing court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision[,] and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]").

DISCUSSION

**I.  <u>Habeas relief is not warranted on Petitioner's claim that</u>**
**<u>trial and appellate counsel provided ineffective assistance</u>**

Under <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984), a petitioner claiming ineffective assistance of counsel must show that counsel's performance was deficient and that the deficient performance

9

prejudiced his defense. "Deficient performance" means unreasonable representation falling below professional norms prevailing at the time of trial. Id. at 688-89. To show "deficient performance," the petitioner must overcome a "strong presumption" that his lawyer "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Further, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. The initial court considering the claim must then "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

The Supreme Court has recognized that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Accordingly, to overturn the strong presumption of adequate assistance, the petitioner must demonstrate that the challenged action cannot reasonably be considered sound trial strategy under the circumstances of the case. Id.

To meet his burden of showing the distinctive kind of "prejudice" required by Strickland, the petitioner must affirmatively

    show that there is a reasonable probability that, but for
    counsel's unprofessional errors, the result of the
    proceeding would have been different. A reasonable
    probability is a probability sufficient to undermine

10

confidence in the outcome.

*Id.* at 694; *see also* *Richter*, 131 S. Ct. at 791 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently."). A court deciding an ineffective-assistance-of-counsel claim need not address both components of the inquiry if the petitioner makes an insufficient showing on one. *Strickland*, 466 U.S. at 697.

In *Richter*, the Supreme Court reiterated that AEDPA requires an additional level of deference to a state court decision rejecting an ineffective-assistance-of-counsel claim:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.

131 S. Ct. at 785. The Supreme Court further explained,

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The

11

question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard. <u>Id.</u> at 788 (citations omitted).

A.  <u>Sufficiency of Evidence to Support Robbery Convictions</u>

Petitioner argues that trial counsel was ineffective for failing to challenge his robbery convictions, presumably in a motion for judgment of acquittal at the close of evidence or a post-verdict motion for a new trial, because the warehouse workers whom he allegedly robbed lacked "authority" over the baby formula and therefore did not constructively possess it.  (Pet. at 12-14, 19-24, 27-28.)  Thus, he could not have "robbed" them of it.  (<u>Id.</u> at 22-24.)

Under California law, a person is guilty of robbery when he commits a "felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  Cal. Penal Code § 211.  A robbery cannot be committed against a person who is not in either actual or constructive possession of the property taken or retained.  <u>People v. McKinnon</u>, 52 Cal. 4th 610, 687, 130 Cal. Rptr. 3d 590, 661 (2011).

Noting that "California follows the long-standing rule that the employees of a business constructively possess the business owner's property during a robbery," the Second District of the California Court of Appeal held in <u>People v. Jones</u>, 82 Cal. App. 4th 485, 490-91, 98 Cal. Rptr. 2d 329, 331-32 (2000), that "business employees – whatever their function – have sufficient representative capacity to their employer so as to be in possession of property stolen from the business owner."  The

12

Fourth District, however, disagreed with <u>Jones</u> in <u>People v. Frazer</u>, 106 Cal. App. 4th 1105, 1115, 131 Cal. Rptr. 2d 319, 325 (2003), finding instead that courts must conduct an individualized inquiry to determine whether an employee had sufficient representative capacity with respect to the stolen property to have been in constructive possession of it.

The California Supreme Court subsequently resolved this split in <u>People v. Scott</u>, 45 Cal. 4th 743, 752-54, 89 Cal. Rptr. 3d 213, 220-21 (2009), finding that <u>Jones</u> was correct and rejecting <u>Frazer</u>'s call for a case-by-case inquiry. Specifically, <u>Scott</u> noted that <u>Jones</u> "correctly state[d]" California law and reflected the holdings of a long line of cases. <u>Scott</u>, 45 Cal. 4th at 752-54; <u>see also</u> <u>McKinnon</u>, 52 Cal. 4th at 687 (holding that "[a]ll employees on duty have constructive possession of their employer's property and may be separate victims of a robbery"). Nonemployees, however, cannot be robbery victims unless they had a "special relationship" with the owner of the property sufficient to give them authority or responsibility to protect the property. <u>Scott</u>, 45 Cal. 4th at 753; <u>People v. Gilbeaux</u>, 111 Cal. App. 4th 515, 523, 3 Cal. Rptr. 3d 835, 841 (2003) (holding that janitors who were independent contractors had special relationship with employer because "[t]hey were part of the group of workers in charge of the premises at the time of the robbery").

Upon independent review, the Court finds that the California courts' denial of Petitioner's ineffective-assistance-of-counsel claim regarding counsel's failure to challenge the sufficiency of the evidence to support his robbery convictions was not

13

objectively unreasonable.  At the close of evidence, counsel moved for judgments of acquittal under Penal Code section 1118.1, challenging the sufficiency of the evidence on every count. (Lodgment 2, 2 Rep.'s Tr. at 334.)  Counsel succeeded in convincing the court to dismiss three robbery counts because the evidence did not affirmatively identify the victims corresponding to those counts, but the court denied the motion as to the remaining counts.  (Id. at 326-36, 349-50.)

Under Scott and the long-standing rule it affirmed, any argument by counsel challenging the victims' constructive possession of the baby formula would have been futile.  See 45 Cal. 4th at 752-54.  The victims consisted of employees and independent truck drivers who reported to the warehouse for duty on the day of the robbery.  (See Lodgment 2, 1 Rep.'s Tr. at 26-27, 30-31.)  Consequently, all victims had at least constructive possession of the baby formula because some were employees and the rest were independent drivers who were "part of the group of workers in charge" of unloading the baby formula that day.

In any event, counsel's failure to expressly alert the court to Frazer's narrower definition of constructive possession was not deficient because the trial court had instructed the jury according to Frazer, stating that "[a]n employee exercises control or the right to control store property if the employee under the circumstances has either express or implied authority over the store property."  (Lodgment 2, 2 Rep.'s Tr. at 390 (emphasis added).)  The court did not instruct the jury under Jones – that all employees automatically have constructive possession of the employer's property.  (Id. at 388-93.)  As to

14

several of the independent truck drivers, the jury found not true

the sentencing enhancement under Penal Code section 12022.6(a)

alleging that Petitioner had taken property exceeding $50,000 in

value, indicating that the jury had determined that those

particular victims did not have constructive possession of the

baby formula and were robbed merely of personal items, such as

cellular telephones and wallets. (Lodgment 2, 2 Rep.'s Tr. at

493-94, 502, 506, 522.) Thus, the jury convicted Petitioner of

robbery even under the tougher <u>Frazer</u> standard.

Further, the evidence at trial overwhelmingly showed that

the victims had constructive possession of the baby formula

pursuant to <u>Frazer</u>, and therefore counsel was not deficient for

failing to focus his argument on those counts, nor was Petitioner

prejudiced. <u>See Frazer</u>, 106 Cal. App. 4th at 1119 (holding that

entire retail team, even nonmanagerial employees, "could

reasonably be viewed as having implied authority over whatever

property was necessary to handle the sales, including the money

in the safe through the manager"). Counsel's tactical decision

to focus on more meritorious claims fell within the wide range of

reasonable professional assistance. <u>See Gustave v. United

States</u>, 627 F.2d 901, 904 (9th Cir. 1980) ("Mere criticism of a

tactic or strategy is not in itself sufficient to support a

charge of inadequate representation."). All of the victims,

including the manager, assistant manager, workers, drivers, and a

mechanic, constructively possessed the baby formula because they

worked as a team in loading and unloading the baby formula.

(Lodgment 2, 1 Rep.'s Tr. at 26-27, 47, 160, 212-13.) For

instance, Willie Velasco, the manager, was responsible for

15

keeping inventory (id. at 77-78); Jose Olmedo and Jose Castro, forklift drivers, helped load and unload the boxes onto trucks (id. at 99, 115-16, 145-46); Jose Samayon, a mechanic, was responsible for fixing machinery and brought in a fixed forklift on the day of the robbery (id. at 127, 160, 207); and Abel Huang, an "order selector," organized purchase orders from stores and was "warming up the forklift" when the robbers arrived (id. at 176-77). Thus, the evidence was sufficient to support the finding of constructive possession under either Scott or Frazer, and trial counsel therefore was not ineffective for failing to challenge the sufficiency of the evidence regarding Petitioner's robbery convictions on the ground that the victims had not possessed the baby formula.

B.  Inconsistent Rulings

Petitioner argues that trial counsel was ineffective for failing to seek dismissal of the kidnapping-for-robbery counts by "bring[ing] to the court's attention" that the judge had previously found Petitioner's codefendant not guilty of those charges in a bench trial.  (Pet. at 12-14, 29-30.)

Upon independent review, the Court finds that the state courts' denial of this claim was not objectively unreasonable. The codefendant, Rivera, had had a bench trial in front of the same judge in 2004 and was found not guilty on all of the kidnapping-for-robbery counts but guilty of seven counts of robbery and seven counts of attempted robbery.  (See Lodgments 15, 16, 17, 18, 19, 20.)  The different results were likely based on the specific roles Petitioner and Rivera played in committing the underlying crimes: even though they robbed the warehouse

16

together, Petitioner personally ordered two victims at gunpoint
to transport baby formula on forklifts (Lodgment 2, 1 Rep.'s Tr.
at 116-19), while Rivera primarily stood guard in front of the
bathroom to prevent the remaining victims from escaping (id. at
44-46).

Petitioner's trial counsel challenged the kidnapping-for-
robbery counts in a motion for judgment of acquittal and a motion
for new trial based on insufficiency of the evidence, and he
successfully obtained dismissal of one of the two counts.
(Lodgment 2, 2 Rep.'s Tr. at 336-49, 529-35.)  Even though
counsel primarily focused on the evidence supporting the
asportation element instead of the court's earlier rulings in
Rivera's trial, it was within his discretion to forgo a weaker
argument in favor of one with a higher likelihood of success.
See McDowell v. Calderon, 107 F.3d 1351, 1358 (9th Cir.) (holding
that counsel was not ineffective in conceding guilt of felony
murder in light of "overwhelming" evidence supporting it and
solely contesting petitioner's intent to kill in order to avoid
death penalty because it was "best choice from a poor lot"),
vacated in part by 130 F.3d 833, 835 (9th Cir. 1997) (en banc);
Morrow v. Hedgpeth, No. CV 08-2222 DSF (JC), 2011 WL 3206466, at
*7 (C.D. Cal. June 27, 2011) (finding it sound strategy for
counsel to concede "incontestable fact" that petitioner was at
crime scene and focus instead on disputed issue of whether he
possessed firearm).  Petitioner, unlike Rivera, pointed a gun at
two workers and forced them to operate the forklift, moving from
place to place.  Thus, much more evidence supported the
kidnapping-for-robbery convictions as to Petitioner than as to

17

Rivera.  In any event, the record suggests that trial counsel

indeed alerted the court to its earlier acquittal of Rivera on

the kidnapping-for-robbery charges, evidenced by the court's

statement that "I know you brought to my attention what I did

before, but I was the 'tryer [sic] of fact' as distinguished from

whether the jury should find [Petitioner] guilty, whether a court

of appeal would think there's sufficient evidence to justify

proof beyond a reasonable doubt."[7]  (Lodgment 2, 2 Rep.'s Tr. at

342.)  Accordingly, the record belies Petitioner's claims of

deficient performance.

Finally, counsel's alleged failure to "bring to the court's

attention" its previous rulings as to Rivera was not prejudicial

because there was no impropriety in the alleged inconsistency.

Because inconsistent verdicts are "inevitable" in the criminal

justice system, "a verdict regarding one defendant has no effect

on the trial of a different defendant," and "[c]ourts should

determine the propriety of a prosecution based on that

prosecution's own record, not a different record."  People v.

Sparks, 48 Cal. 4th 1, 5, 104 Cal. Rptr. 3d 764, 765 (2010); see

People v. Palmer, 24 Cal. 4th 856, 858, 103 Cal. Rptr. 2d 13, 14

(2001) (holding that requirement of consistent verdicts in

separate criminal trials is "a vestige of the past with no

_____

    [7]    The Clerk's Transcript does not contain counsel's written
motion for judgment of acquittal, if one existed, and a review of
counsel's oral argument in support of the motion does not reveal
when or how counsel reminded the court about its rulings in
Rivera's case.  (See Lodgment 2, 2 Rep.'s Tr. at 336-42.)

continuing validity");[8] <u>see also</u> <u>Juan H. v. Allen</u>, 408 F.3d 1262,
1273 (9th Cir. 2005) (finding counsel not constitutionally
ineffective for failing to make "meritless objection"); <u>Lowry v.</u>
<u>Lewis</u>, 21 F.3d 344, 346-47 (9th Cir. 1994) (holding that failure
to file motion not ineffective assistance when no reasonable
possibility motion would have succeeded).  In any event, the
court explained that one reason the result was different in
Rivera's case was that in it, the court had acted as the trier of
fact, whereas in Petitioner's case a jury found the evidence
sufficient to convict Petitioner beyond a reasonable doubt, and
under the deferential standards governing judgment-of-acquittal
and new-trial motions, the court could not find that the jury had
erred.

     In sum, counsel's performance was neither deficient nor
prejudicial, and the state courts' denial of this claim was not
objectively unreasonable.

     C.    <u>Prosecutorial Misconduct</u>

     Petitioner argues that trial counsel was ineffective for
failing to object to the prosecutor's alleged misconduct in
presenting "inconsistent theories" against Petitioner and Rivera.

_____

     [8]    In <u>Sparks</u> the California Supreme Court overruled <u>United</u>
<u>States v. Taylor</u>, 12 Cal. 3d 686, 117 Cal. Rptr. 70 (1974), which
allowed nonmutual collateral estoppel in criminal cases.  48 Cal.
4th at 10-11.  In doing so, <u>Sparks</u> recognized that <u>Taylor</u> had been
significantly weakened by intervening federal and state decisions,
including <u>Standefer v. United States</u>, 447 U.S. 10, 100 S. Ct. 1999,
64 L. Ed. 2d 689 (1980), and <u>Palmer</u>, observing that those cases
"have deprived <u>Taylor</u> of any continuing validity."  <u>Id.</u> at 8, 10-
11.  Thus, counsel's decision at Petitioner's trial not to assert
the defense of nonmutual collateral estoppel under <u>Taylor</u>
constituted a reasonable tactical decision.

(Pet. at 12-14, 31-32.)

Due process and fundamental fairness prohibit a prosecutor, absent good-faith justification, from presenting inconsistent and irreconcilable factual theories of a crime in separate trials. See, e.g., In re Sakarias, 35 Cal. 4th 140, 156, 159-60, 25 Cal. Rptr. 3d 265, 278-79, 281-82 (2005) (finding that prosecutor's arguments in separate trials attributing series of hatchet blows to victim to different defendants violated due process because one of two theories "must be false"). Due process is not violated, however, if the prosecutor's theories remained "fundamentally consistent," in that "any variation did not concern a fact used to convict the defendant or increase his or her punishment." Id. at 161; see, e.g., People v. Turner, 8 Cal. 4th 137, 194, 32 Cal. Rptr. 2d 762, 794 (1994) (rejecting prosecutorial-misconduct claim when prosecutor made inconsistent statements regarding whether accomplice shared defendant's intent to kill in part because prosecutor's theory in both cases was that defendant was actual killer); Haynes v. Cupp, 827 F.2d 435, 439 (9th Cir. 1987) (holding that prosecutor's "variations in emphasis" not cause for reversal when "underlying theory of the case" was consistent).

Upon independent review, the Court finds that the state courts' denial of this claim was not objectively unreasonable. Counsel was not ineffective in failing to challenge the prosecutors' allegedly inconsistent theories because the theory of the case in both trials was fundamentally consistent. Specifically, the prosecutors argued in both trials that Petitioner, Rivera, and a third accomplice entered a food-

20

distribution warehouse, ordered a total of 17 victims into the
bathroom at gunpoint, forced two forklift operators to load boxes
for them, and escaped with over $80,000 worth of baby formula.
(Compare Lodgment 6 at 2-3 with Lodgment 21 at 2.)  The only
notable difference was the quantity and nature of the charges:
Petitioner was charged with two counts of kidnapping for robbery,
17 counts of robbery, and 17 counts of false imprisonment
(Lodgment 1, 1 Clerk's Tr. at 58-73; 2 Clerk's Tr. at 202-03),
and Rivera was charged with 11 counts of kidnapping for robbery
and 16 counts of robbery (Lodgment 15).  The prosecutor in each
case was free to exercise her broad discretion to seek different
charges against different defendants.  See People v. Lucas, 12
Cal. 4th 415, 477, 48 Cal. Rptr. 2d 525, 564 (1995) ("Prosecutors
have broad discretion to decide whom to charge, and for what
crime.")  Thus, defense counsel's decision not to challenge the
prosecutor's broad discretion was not deficient.  Accordingly,
the state courts' denial of this claim was not objectively
unreasonable.

     D.   Failure to Present Adequate Defense

     Petitioner argues that trial counsel provided ineffective
assistance by failing to present any defense witnesses and by
conceding in closing argument that Petitioner was guilty of
robbery and false imprisonment, challenging solely the
kidnapping-for-robbery counts.  (Pet. at 14, 25-28.)  Petitioner
claims that counsel's deficient performance resulted in his
receiving a much more severe sentence than Rivera, who was
sentenced to approximately 28 years in prison compared to
Petitioner's life term plus 90 years.  (Id.)

During closing argument, defense counsel stated,

I'm not going to sit here and argue to you that there's not false imprisonment here. So the not guilties, you can throw out on that. Don't have to worry about it. That saves you some time.

. . . .

So time has to be spent in two areas here: number one, whether or not it was [Petitioner]; . . . Certainly, there's robberies here. If you believe it's [Petitioner], that's an easy call here. Then you convict him of the robberies.

. . . .

So if it's [Petitioner], then the issue of whether it was robbery or false imprisonment is frankly not open to much discussion here. This issue entirely comes down to . . . [the kidnapping-for-robbery counts].

(Lodgment 2, 2 Rep.'s Tr. at 455-57.) Counsel then argued extensively that the asportation element of the kidnapping-for-robbery counts had not been satisfied. (Id. at 457-66.) In conclusion, counsel emphasized the following:

If you decide it was [Petitioner], then he is guilty of the robberies. He is guilty of the false imprisonment by menace. If you decide that's him, period, . . . No discussion beyond that.

If it's not him, he can't be guilty of any of it; that's your call.

Because there's no question that robbery occurred, and there's no question that false imprisonment occurred,

22

the question is whether kidnap for robbery occurred.

That's the question and I submit to you, no.
(Id. at 466.)

Upon independent review, the Court finds that the state courts' denial of this claim was not objectively unreasonable. First, counsel did not concede that Petitioner had committed any crimes. Indeed, he specifically argued that "if it's not him, he can't be guilty of any of it; that's your call." (Lodgment 2, 2 Rep.'s Tr. at 466.) Second, to the extent he did not spend much time challenging Petitioner's involvement, that was because the evidence at trial was overwhelming,[9] leaving counsel little choice but to focus primarily on the kidnapping-for-robbery charges, which carried the most severe penalty. Counsel's strategic concession regarding the robbery and false-imprisonment charges, in light of the fact that Petitioner was identified by several victims as one of the robbers and captured on surveillance camera in the warehouse during the commission of the crimes (see Lodgment 2, 1 Rep.'s Tr. at 34, 58, 102, 148, 182, 196), to focus on more meritorious defenses reflected sound trial strategy in attempting to gain credibility with the jury. See Morrow, 2011 WL 3206466, at *7; see also Yarborough v. Gentry, 540 U.S. 1, 9, 124 S. Ct. 1, 6, 157 L. Ed. 2d 1 (2003) (holding counsel not ineffective for calling petitioner "bad person, lousy drug addict, stinking thief, [and] jailbird" because "[b]y candidly acknowledging his client's shortcomings, counsel might

---

[9]     Petitioner freely admits in the Petition that he was one of the three armed robbers who "stole the baby formula" from the warehouse.  (Pet. at 18, 23.)

23

have built credibility with the jury and persuaded it to focus on the relevant issues in the case").

Further, counsel did not render deficient performance in failing to present any defense witnesses because Petitioner expressly declined to testify (Lodgment 2, 2 Rep.'s Tr. at 323), and given the particularly incriminating evidence presented by the prosecutor, no defense witnesses likely could have rebutted the fact that he committed the underlying crimes. Moreover, Petitioner has not identified specific defense witnesses whom counsel should have called or alternative defense theories available that counsel failed to pursue. See Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th Cir. 1995) (holding that counsel not "responsible for the difficulty of the case he inherits" and even "[t]he choice to pursue a bad strategy" not deficient when "no better choice exists"). Thus, counsel's strategic concession fell within the wide range of reasonable professional assistance.

Finally, Petitioner's counsel was not constitutionally ineffective for failing to secure a similar sentence for him as Rivera received. As explained above, even though counsel persuaded the trial court to dismiss one of the kidnapping-for-robbery convictions, the court found that sufficient evidence supported the other such count, which carried a mandatory life sentence. See Cal. Penal Code § 209(b)(1) ("Any person who kidnaps or carries away any individual to commit robbery . . . shall be punished by imprisonment in the state prison for life with the possibility of parole.") In addition, counsel made numerous unsuccessful attempts to persuade Petitioner to take a

24

more favorable plea deal.  For instance, Petitioner rejected (1)
a 20-year deal before jury selection, insisting that he did not
commit the crimes (Lodgment 2, 1 Rep.'s Tr. at 4); (2) a 30-year
deal after one day of trial, which counsel urged him to take
"with every bone in his body" because he would be facing "between
65 and 89 years" even without the mandatory life terms for the
kidnapping-for-robbery counts (<u>id.</u> at 81-83); and (3) a 60-year
deal the second day of trial (Lodgment 2, 2 Rep.'s Tr. at 245-
46).  Therefore, counsel did not perform deficiently in this
regard.  Accordingly, the state courts' rejection of this claim
was not objectively unreasonable.

     E.   <u>Cumulative Error</u>

Petitioner argues that the cumulative prejudice from the
above instances of ineffective assistance of counsel deprived him
of a fair trial.  (Pet. at 33.)  Although individual errors may
not each rise to the level of a constitutional violation, a
collection of such errors might violate a petitioner's
constitutional rights.  <u>Harris v. Wood</u>, 64 F.3d 1432, 1438 (9th
Cir. 1995).  Here, because the Court has determined that counsel
did not render deficient performance in any of the above
instances, there can be no cumulative prejudice stemming from
them.  <u>See</u> <u>Fuller v. Roe</u>, 182 F.3d 699, 704 (9th Cir. 1999)
(finding cumulative-error doctrine inapplicable absent any
errors).  Accordingly, the state courts' denial of Petitioner's
cumulative-error claim was not objectively unreasonable.

     F.   <u>Appellate Counsel</u>

Petitioner argues that appellate counsel was ineffective for
failing to raise the claims above on direct appeal.  (Pet. at

34.)

Appellate counsel properly may decline to raise an argument
on appeal because he foresees little or no likelihood of success
on that claim.  <u>Smith v. Robbins</u>, 528 U.S. 259, 288, 120 S. Ct.
746, 765, 145 L. Ed. 2d 756 (2000).  Thus, an "appellate
counsel's failure to raise issues on direct appeal does not
constitute ineffective assistance when appeal would not have
provided grounds for reversal."  <u>Wildman v. Johnson</u>, 261 F.3d
832, 840 (9th Cir. 2001).

Upon independent review, the Court finds that the state
courts' denial of this claim was not objectively unreasonable.
First, appellate counsel was not ineffective for failing to raise
on direct appeal claims asserting ineffectiveness of Petitioner's
trial counsel because California law dictates that those claims
generally are "more appropriately litigated in a habeas corpus
proceeding."  <u>People v. Mendoza Tello</u>, 15 Cal. 4th 264, 266-67,
62 Cal. Rptr. 2d 437, 438 (1997).  Second, as to the underlying
claims, because the Court has determined that trial counsel was
not constitutionally ineffective for failing to raise meritless
claims, appellate counsel was not ineffective for failing to
raise those same claims.  Thus, the state courts' denial of this
claim was not objectively unreasonable.

**II.  <u>Petitioner's request for an evidentiary hearing should be</u>**
**<u>denied</u>**

Petitioner seeks an evidentiary hearing.  (Pet. at 26, 32.)
The Court should deny his request.  Under <u>Cullen v. Pinholster</u>,
563 U.S. ___, 131 S. Ct. 1388, 1398-1401, 179 L. Ed. 2d 557
(2011), federal courts may not consider new evidence concerning

26

habeas claims subject to review under § 2254(d)(1).  <u>See</u> <u>Stokley</u>
<u>v. Ryan</u>, 659 F.3d 802, 809 (9th Cir. 2011).  To the extent the
state courts' denials were premised on findings of fact, an
evidentiary hearing is still not warranted under § 2254(d)(2)
because, as discussed herein, Petitioner has not credibly
challenged those facts.  <u>See</u> <u>Perez v. Rosario</u>, 459 F.3d 943, 954
& n.5 (9th Cir. 2006) (holding, pre-<u>Pinholster</u>, that no
evidentiary hearing required for petitioner's challenges to state
courts' factual findings when challenges were "entirely
incredible").

**III.  <u>Petitioner's request to make photocopies should be denied</u>**

Petitioner requests the Court to direct Respondent to allow
him to make photocopies in excess of 100 pages in case the Court
needs additional documents to adjudicate his claims.  (Pet. at
35-37.)  Respondent has lodged all necessary state court records,
and therefore the Court should deny Petitioner's request.

**RECOMMENDATION**

IT THEREFORE IS RECOMMENDED that the District Court issue an
Order (1) approving and accepting this Report and Recommendation,
(2) denying Petitioner's requests for an evidentiary hearing and
photocopies, and (3) directing that Judgment be entered denying
the Petition and dismissing this action with prejudice.

DATED: <u>April 11, 2012</u>

JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE

27